**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                    CASE NO. 3:04-cr-259-J-99TEM

COREY LAVALE MYERS
_____

**REPORT AND RECOMMENDATION**[1]

The Defendant has moved to suppress evidence obtained as a result of the detention of the Defendant, arguing it constituted an illegal arrest and was not based upon probable cause (Doc. #33).  The United States has replied, claiming the detention was proper because probable cause existed, and, alternatively, that the detention was allowed by Supreme Court precedent in relation to the execution of a search warrant (Doc. #38). The motion was referred to the undersigned for the preparation of this Report and Recommendation.  Testimony and argument were heard by the Court on February 9, 2005 (Doc. #47).

***Factual background***

On September 16, 2004, Drug Enforcement Administration agents obtained a search warrant from a United States Magistrate Judge for the search of a residence at 1281 Turtle Creek Drive, Jacksonville, Florida (Transcript, Gov't. Ex. 1).  The affidavit for the search warrant was based upon a confidential source's claim that Corey Myers, the Defendant, resided at that location, had large amounts of cash at times, and was distributing kilogram

---

[1]Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  *See* 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

quantity amounts of cocaine. The affidavit also included information from agents who had searched trash from the house left on the street for collection and found packaging material often used by drug dealers and marijuana residue, as well as mail addressed to Myers.

Officers prepared to execute the warrant on September 17, 2004, and established surveillance by DEA Task Force Officer Matthew Robinson nearby. He observed Myers leave the residence carrying a plastic grocery bag, enter a vehicle and drive away. The officer testified he did not stop the Defendant immediately because he was by himself in an unmarked car without a backseat arrest cage and did not consider it the safe thing to do. After being advised of the Defendant driving away, a supervisor ordered officers in a marked patrol car to stop Myers' vehicle. The car was stopped 7/10ths of a mile from Myers' residence, after he had turned out of the subdivision onto another street. The officers advised Defendant that agents had a warrant to search his house and he was being detained. The case agent asked the Defendant if anyone was in the house. The Defendant said his wife and another individual were inside and the porch door was not locked. The Defendant was handcuffed and driven in a police car back to the residence. Another officer drove the vehicle which the Defendant had been driving back to the residence.

Back at the house, after the Defendant's wife opened the door, the officers secured the house, handcuffing Defendant's wife and her brother. DEA agents asked the Defendant for consent to search the grocery bag another agent had seen the Defendant carrying when he entered the car. The Defendant consented and the agent found a large

amount of currency in the grocery bag. The Defendant stated the amount was $62,000.[2]

DEA agent Bruce Savell advised the Defendant, his wife and her brother of their Fifth Amendment rights from a standard *Miranda*[3] card. The Defendant said he understood his rights, then stated, without being questioned, "All the dope in the house is mine." He directed agents to certain locations in the residence where contraband items could be found. He also proceeded to answer questions briefly, then indicated he wanted to talk to an attorney. Questioning ceased at that point.

### *Issues:*

Defendant is not challenging the validity of the search warrant, nor contesting items found in the house. He challenges his detention after he had driven away from the house, and argues the illegality of the detention negated his subsequent un-*Mirandized* consent to search the vehicle, and any statements he made in the house, even after receiving *Miranda* warnings. The United States argues there was probable cause for the Defendant's arrest when his vehicle was stopped, and, alternatively, that *Michigan v. Summers*, 452 U.S. 692 (1981) allows detention of the occupants of a residence for which a search warrant has been obtained. They also argue the consent to search the vehicle and any statements made were voluntary.

### *Analysis:*

(A) *Was there probable cause for arrest?*

The Defendant does not challenge the probable cause for search of the residence

---

[2]According to the agents, the actual amount was $61,000.

[3]*Miranda v. Arizona,* 384 U.S. 436 (1966)

3

contained in the search warrant application; however, he asserts it does not contain probable cause for his arrest. The testimony indicated no new information about the Defendant, not contained in the affidavit, other than he carried a plastic grocery bag to the car before 8 a.m. on the date in question, put it in the backseat and drove away. Even accepting the government's argument that the Defendant was believed to be a drug dealer, the Court does not find that the carrying of the grocery bag to the car, without knowledge or even a tip as to what the bag contained, adds anything to probable cause. Even a drug dealer might carry a lunch, a pair of shoes to be repaired, or other non-incriminating items. The sighting of Defendant leaving the house early in the morning does, however, provide corroboration to the confidential source's statement and the mail from a trash pull that the Defendant resides at the address.

Thus, the question remains whether the affidavit for the search warrant contained probable cause for the Defendant's arrest. "[A]n arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." *Durruthy v. Pastor,* 351 F.3d 1080, 1088 (11th Cir. 2003). Probable cause requires "only a probability of substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983). In determining whether probable cause exists, an official must consider the totality of the circumstances. *Id.* at 238.

The affidavit states that a cooperating source told the affiant agent that Corey Myers, the Defendant, was involved in distribution of kilogram quantities of cocaine and that he resided at 1281 Turtle Creek Drive South. The affidavit stated that property records show "Kadajalt Renee Minton et al" purchased the residence in 2003 and that utilities were in the name of Milton Minton.

The confidential source said he had visit Myers at the residence on three separate occasions in April-May, June-July and early August 2004 and on each occasion observed large amounts of United States currency.  Although the affidavit does not estimate an amount, on one occasion the source said the currency appeared to "completely fill" a deep freezer in which it was concealed.  On another occasion, he stated "stacks" of currency were being wrapped in plastic.

The affidavit mentioned that the confidential source had been used by one Jacksonville Sheriff's Office detective for 15 years, with that detective finding him reliable and making at least 10 arrests and other seizures of drugs, currency and weapons based on information the source had provided.  The affiant also indicated, however, that on at least two occasions, other cooperating sources had questioned this sources's reliability. Because of that, the affiant stated officers on September 16, 2004, had retrieved and searched garbage placed at the curb of the residence. In the trash, they found:

(a) numerous pieces of tape, rubber wrappings, plastic baggies and empty heat-sealed packaging material of types the agent had previously found used by drug traffickers;

(b) an empty taped package consistent with the size and shape of a brick, which the agent found consistent with cocaine packaging he had previously encountered;

(c) numerous rubber bands and money wrappers marked "$2,000" of a type used by banks to package currency;

(d) an unstated amount of green leafy substance that field-tested positive for presence of marijuana;

(e) various pieces of United States mail addressed to Corey Myers (although

it did not state what address was used on the mail).

Thus even though ownership and utility records did not directly link Myers to the address where the arguably incriminating trash was found,[4] the mail and the statements of the cooperating source did. And, of course, the agent saw Myers leave the house the morning of the search and drive away in his car.

In adopting the totality-of-the-circumstances approach to determination of probable cause in matters in which an informant, or anonymous source, has provided information, the Supreme Court in *Illinois v. Gates, supra,* 462 U.S. at 238, moved away from more rigid two-part tests examining first the reliability or veracity of an informant and secondly the basis of his knowledge.[5] Although recognizing those may be important factors, the Court said they should not be applied rigidly. *Id.* at 230. "This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip." *Id.* at 230-31.

The Court noted that the failure of a unusually reliable informant to thoroughly set forth the basis of his knowledge should not be a bar to a finding of probable cause. *Id.* at 233.

In *Gates,* local police in Illinois had received an anonymous letter stating a married couple was selling drugs for a living. The letter specified the wife was driving their car to Florida and the husband was flying and they would be driving back in a few days with the

---

[4]Agents determined, although it is not clear whether they knew prior to the search, that the owner of the residence was the Defendant's wife, and the utilities were in the name of her brother, the third person present at the scene during the search.

[5] *See, e.g., Spinelli v. United States*, 393 U.S. 410 (1969); *Aguilar v. Texas*, 378 U.S. 108 (1964)

drugs. Police determined an address for the couple, and found that the husband was flying to Florida at a certain time. They had Florida police watch the husband as he arrived and went to a motel room his wife had obtained. The Florida police observed the couple drive north on an interstate highway the next day. Illinois police obtained a search warrant for the couple's house and car based on the anonymous letter and observations of police which confirmed some of the details provided. The Court found that even though the reliability and basis of knowledge of the letter writer remained unknown, the police corroboration of otherwise non-incriminating facts provided a substantial basis for believing it.[6]

The Court found that a "magistrate could properly conclude" that someone with access to accurate information such as the travel plans "also had access to reliable information ..... of the illegal activities." *Id.* at 245.

Although *Gates* concerned the probable cause in a search warrant affidavit, the Court noted the same standards apply for a warrantless arrest. The *Gates* Court pointed to its statement in *Jones v. United States,* 362 U.S. 257, 269 (1960), that an officer making a warrantless arrest "may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *Gates, supra,* 462 U.S. at

---

[6]The Illinois court had found the police had merely corroborated "innocent activity," 423 N.E.2d 887, 893 (1981), but the Supreme Court noted that in *Draper v. United States*, 358 U.S. 307 (1959) the informant's statement that a man would be bringing heroin to Chicago on a train gave police who verified the travel arrangements and man's appearance "reasonable grounds" to believe the one unverified bit of information, that he would be carrying heroin. *Gates, supra,* 462 U.S. at 243-44 n. 13. The Court said the verification was "perfectly reasonable," noting that "probable cause requires only a probability of substantial chance of criminal activity, not an actual showing of such activity." *Id.*

241-242.

In this case, the DEA agent had the statement of the cooperating source that Defendant Myers was involved in distribution of kilogram quantities of cocaine and had large amounts of money to show for it. The agents had corroborated Myers was an occupant of the residence through mail and their observation. They also had found evidence in the trash set out in front of the house that was consistent with the common wrappings of a kilogram brick of cocaine, other packaging material often used by drug dealers and money straps marked $2,000, as well as an unspecified quantity of marijuana or marijuana residue which they had field tested.[7]

At a minimum, that information supports probable cause to arrest for conspiracy to possess controlled substances with intent to distribute. Although possession of large amounts of currency is not *per se* illegal, neither is driving from Florida to Illinois which was a factor used in *Gates.* It is within the experience of the agents, as mentioned in the affidavit, that drug dealers often have large amounts of money that they conceal in their houses, as well as in other manners difficult to trace.[8] Thus, the evidence of money wrappers buttresses the confidential source's statements, just as surveillance did in *Gates*.

Although Defendant argues that drug agents could have obtained an arrest warrant, or arrested Defendant earlier if they believed they had probable cause, there is no requirement that law enforcement officers arrest a person at the earliest opportunity.

---

[7] In *United States v. Reinholtz*, 245 F.3d 765, 776 (8th Cir. 2001), the court held drug residue and syringes and documents identifying resident provide sufficient for probable cause for a search warrant.

[8] Affidavit of the DEA agent at page 6. Gov't. Ex. 1.

*United States v. Clark*, 559 F.2d 420, 425 (5th Cir. 1977).[9]   That is not meant to say that the type of arrest that occurred in this case leaves an aggrieved person without remedy. If police do not find contraband in a search, and release a person so detained, the person may pursue appropriate civil remedies against false arrest. *See, e.g., Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998).

The Court finds there was probable cause for the arrest at the time Defendant was stopped, even though he wasn't told he was arrested.

(B) *If probable cause did not exist, was the detention proper?*

The United States relies upon *Michigan v. Summers*, 452 U.S. 692, for the proposition that an occupant of a house may be detained by police during the execution of a search pursuant to a search warrant, and returned to the residence if found outside it. The Court in *Summers* did hold that a warrant to search for contraband implicitly carries with it the "limited authority" to detain the occupants on the premises while the search was being conducted. *Id.* at 705.

The question goes to the extent of the limited authority. The prosecutor in this case conceded at argument that it would be improper to detain someone in Alaska or California and bring that person to Florida for the execution of a search warrant on his/her residence. In *Summers*, the police who possessed the warrant encountered the defendant descending the front steps of his house as they approached to execute the warrant, and they requested his assistance in entering the house and detained him pending the search. The Court

---

[9]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

recognized that "limited intrusions" have been allowed on individual's personal security based on less than probable cause, citing *Terry v. Ohio*, 392 U.S. 1 (1968) (frisking a suspect allowed based on reasonable belief the suspect was armed and dangerous) and *Adams v. Williams*, 407 U.S. 143 (1972) (police could stop a suspect to investigate informant's tip the suspect was armed and carrying narcotics).  *Summers, supra,* 452 at 698.  Such detentions and intrusions are justified by substantial law enforcement interests based on less than probable cause, but with an articulable basis for suspecting criminal activity the conduct is not unreasonable under the Fourth Amendment.  *Id.* at 699-700.

In deciding whether an intrusion is unreasonable without probable cause or is justified by a lesser standard, both the character of the intrusion and its justification must be examined. *Id.* at 700-701. In examining the intrusion, the Court in *Summers* noted that a magistrate judge had found probable cause for the search of the residence, the detention was thus only an incremental intrusion on personal liberty and that most persons might elect to observe the search of their possessions.  Also, the detention in the residence would involve "neither the inconvenience nor the indignity associated with a compelled visit to a police station." *Id.* at 702.[10]

In examining the justification for the pre-probable cause detention in *Summers,* the Court looked at three law enforcement interests:  preventing flight if incriminating evidence

---

[10]The Court compared the detention at the residence situation with that in *Dunaway v. New York*, 442 U.S. 200 (1979), in which the suspect was taken to a police station and questioned  two hours before police had probable cause to charge him.  Even though the police had an articulable basis for suspecting the defendant's involvement in the homicide in *Dunaway*, and the defendant waived his Fifth Amendment rights before making incriminatory statements, the Court found his Fourth Amendment rights were nonetheless violated.  *Dunaway, supra,* 442 U.S. at 219.

is found, minimizing harm to the officers, and facilitating the orderly completion of the search through the occupant's self-interest in avoiding forced entry into locked areas. *Summers, supra,* at 691-92. The Court also noted that the existence of a search warrant from a neutral magistrate provides an objective basis for believing that detention of the person based on suspicions is justified. *Id.* at 703-4.

Since *Summers*, several circuit courts have considered whether persons may be detained at a location separate from a residence subject to a search warrant and taken back to the residence for execution of the search. The United States cites *United States v. Cochran,* 939 F.2d 337 (6th Cir. 1991), as support for its position. The officers in *Cochran* went to a residence to execute a warrant, where they saw the defendant leave by his car (the opinion does not indicate whether the defendant saw police arrive, or police simply saw him leaving). The exact distance Cochran traveled before being stopped is not provided, but officers testified he was still driving on the same street as the residence and was a "very short distance" from the house. The officers chose to stop the defendant to try to avoid a forcible entrance into the residence because he was believed to always carry a firearm and a guard dog was known to be at the residence. *Id.* at 338. The court found by a 2-1 majority that *Summers* did not impose on police a geographic proximity test, but rather the proper focus should be whether the defendant was detained "as soon as practicable." *Id.* at 339.

Similarly, in *United States v. Cavazos*, 288 F.3d 706 (5th Cir. 2002), the appellate court upheld the detention of a defendant who had driven away from the residence, but closely observed the officers' vehicle as it was approaching, and then drove in a counter-surveillance fashion. The court held the unusual conduct warranted a belief the defendant

11

might have fled or alerted other occupants of the house. Even though the defendant was stopped two blocks from the house, the court found there was ample justification to detain him.

The Defendant argues that the case of *United States v. Hogan*, 25 F.3d 690 (8th Cir. 1994) should be applied. In *Hogan*, police observed the defendant drive away from the residence in a 1987 Oldsmobile while they were doing surveillance of the residence subject to the warrant. The warrant also included a "1990 Dodge pickup truck" in which drugs were to be transported that afternoon. Police decided to stop the Oldsmobile, and did so at a location three to five miles away from the residence, and then took the defendant back to the house, but kept him outside.

Balancing the intrusiveness against the law enforcement interests listed in *Summers*, the court found the defendant's rights violated since the defendant was not aware of the planned search, neither flight nor a risk of harm to the agents was posed, and that even though he was taken back, it could not have been for the orderly execution of the warrant since the police kept him outside. *Hogan, supra,* at 693.

In *United States v. Sherrill,* 27 F.3d 344 (8th Cir.1994), the court found that officers who observed a defendant drive away as they were preparing to execute a search warrant should not have been stopped by police and returned to the residence. The court found that a traffic stop on a public street was more intrusive than the front- step detention in *Summers. Sherrill, supra,* 27 F.3d at 346. The court found that two of the three law enforcement interests enunciated in *Summers*, flight and risk to the officers, were inapplicable once the defendant had left the residence unaware of the warrant and police approach. The court acknowledged the defendant did assist in an orderly search once

12

returned to the house, but found that was not sufficient reason to extend the *Summers* rationale a distance from the house.

In *Sherrill,* the court declined to suppress any evidence because it found there was probable cause for the arrest through an informant's tip and corroboration of foot traffic to the house through surveillance. *Sherrill, supra,* at 347.  In a prior case, the Eighth Circuit had declined to extend *Summers* to a stop "several blocks away" from the residence they were to search, interpreting the *Summers* phrase "detain the occupants of the premises" narrowly.  *United States v. Boyd*, 696 F.2d 63, 65 n. 2 (8th Cir. 1982), *cert. denied* 460 U.S. 1093 (1983).  In *Boyd*, the court nonetheless denied suppressing evidence from the detention because it found the information the police had provided probable cause for the arrest.  In a post-*Sherrill* case, the Eighth Circuit rejected a claim a detention made at a defendant's workplace was justified by the fact a search warrant had been obtained for his residence.  *Reinholz*, *supra*, 245 F.3d at 777-78.  Police drove the defendant 25 minutes to the residence.  The court found he could not have been a flight risk, nor could his arrest minimize risk at the house because he was unaware of the warrant.  *Id.*

In a pre-*Summers* case, the Eighth Circuit upheld police stopping an occupant two or three miles from a residence he had left where the police indicated they merely were going to notify him and invite him to be present during the search.  *United States v. Henderson*, 645 F.2d 627 (8th Cir.), *cert. denied* 454 U.S. 829 (1981).  In fact, they arrested the suspect after noticing marijuana in plain view once they stopped the vehicle.

The facts of this case are more like those of *Sherrill* or *Hogan*.[11]  There was no

---

[11]This Court does not disagree with the holding of *Cavazos*, or find it inconsistent with the logic of *Sherrill* or *Hogan.*

indication the Defendant had recognized the surveillance or was aware of the planned execution of the search warrant. The informant was not quoted as mentioning any firearms expected to be in the residence,[12] nor was the word "firearm" used in the affidavit. There was no mention of any guard dogs. The confidential source had said he had seen money stored in a freezer, rather than a locked safe. Thus, the law enforcement interests analyzed in *Summers, supra,* are not present in this case, at least to the extent they were in *Cavazos.* Although flight is always a possibility should an occupant not be present at a searched residence and later hear about the search, that is always a factor and there was no indication of a special problem in this case. There was no mention of any special risk to officers in the affidavit,[13] nor any indication that special help would be needed in conducting the search.

However, at the hearing the case agent testified that right after the Defendant was detained, he was asked who else was in the house and also about the burglar bars agents had noticed on the outside porch leading toward the front door. Because the surveillance agent saw a female drive the car to the address and enter prior to the Defendant leaving, the agents did have a basis to believe there was at least one occupant inside the house. The burglar bars also are a distinguishing feature between the instant case and *Sherrill.*

---

[12]In fact a loaded firearm was found in the bedroom by the bed.

[13]The Court is concerned about officer safety, a factor always present in police encounters with suspects. The Supreme Court has commented that significant danger to officers occurs during traffic stops. *United States v. Robinson*, 414 U.S. 218, 234, n. 5 (1973). The Eleventh Circuit also has upheld temporary detention of suspects to assure officer safety. *United States v. Clark*, 337 F.3d 1282 (11th Cir. 2003), *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002). The question is what is reasonable under the Fourth Amendment. For that the totality of the circumstances in each case must be considered. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Clark, supra,* 337 F.3d at 1286.

Although the Court does not doubt that the agents could have found a way to pry or force the lock on the burglar bar door, or cut it, that activity could slow any entry and provide persons inside the house time, should they be so inclined, to destroy evidence or prepare to resist the entry through the use of firearms. That factor makes a detention, absent probable cause, a closer issue than it would otherwise be.[14]

This Court is not inclined to read *Summers* as broadly as did the court in *Cochran.* As the dissent in *Cochran* implied, no other Supreme Court cases have discussed allowing persons detained on less than probable cause to be transported any distance to a different location.[15] *Summers, supra,* at 341. Indeed, both the language and holdings in several other Supreme Court detention cases show the concern for an individual's liberty. In *Terry v. Ohio*, 392 U.S. 1, 9 (1968), the Court quoted its opinion from *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891), when it stated:

> "For, as this Court has always recognized, '[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.' "

*Id.* (internal citations omitted).

In *Florida v. Royer*, 460 U.S. 491 (1983), the Court held an airline passenger had been effectively arrested by police who approached him, identified themselves, told the passenger he was suspected on transporting narcotics and asked him to accompany them to a police room at the airport without telling him he was free to leave. Even though the

---

[14]The Defendant did assist in advising agents at times during the search, as also occurred in *Sherrill, supra,* 27 F.3d at 347; however, the court in *Sherrill* found such assistance by itself was not sufficient reason for a stop at some distance from the residence.

[15]Nor has the Court been cited to any Eleventh Circuit cases on that issue.

authorities had reasonable grounds for suspicion of criminal activity because the passenger paid cash for a ticket under a false name, the police actions in seizing his ticket and identification and asking him to accompany them to an airport police office only 40 feet away without telling him he was free to go crossed the line from a simple detention into an illegal arrest. *Id.* at 502.

Police may approach a person to ask questions. *California v. Hodari D.*, 449 U.S. 621, 628 (1991). Under *Terry, supra,* 392 U.S. 1, they may temporarily detain a person if they have reasonable suspicion of criminal activity. Forcing the person to accompany law enforcement officers to another location, however, requires probable cause, or a valid consent. No such consent was shown in this case. Moreover, the Defendant was handcuffed prior to being transported.

This Court finds that the mere existence of a search warrant ordinarily is not ground for taking into custody a person who is not on, or in visual observation of, the premises to be searched,[16] and taking the person back to the residence when he was otherwise unaware of the search. Stopping and detaining a person in a public place is a significant intrusion in that person's life. The further from the residence the stop occurs, the less "incremental" the intrusion becomes. Although being returned to a residence in handcuffs may involve less indignity than being taken to a police station, where one is photographed and fingerprinted and housed in a holding cell with other prisoners, it nonetheless is an indignity. Neighbors would be able to see the custody.

---

[16] The Court is not trying to establish complete perimeters to such conduct, but only to interpret the meaning of *Summers.* There may be articulable risk factors in some cases not present in the instant case.

Although another of the factors to examine is the risk to the officers conducting the search, the Court notes that car stops are inherently dangerous as well.[17] The occupant of a car, if armed, often would have the weapon within reach, and notice of the approaching police could give him brief time to decide what to do. The Court accepts the agent's testimony that in this case he stopped, or caused other agents to stop, the Defendant as soon as practicable; but that does not determine the underlying issue as to whether such a stop can be made as a detention away from the residence if probable cause is not present.

If probable cause were not present in this case, the undersigned would not find the existence of the search warrant to be sufficient reason for detaining and returning the Defendant to his residence. The Court does not find the Sixth Circuit's two to one (2-1) decision in *Cochran*, supra, 939 F.2d 337, to be persuasive in this case.

### ***Search of the car***

The Defendant contests the search of the car. The agents conducted the search back at the house after asking and obtaining the Defendant's consent, although prior to the administration of the *Miranda* warnings and without being told he could refuse. The Defendant was in custody, handcuffed, at the time of the request. Nonetheless, consent to a Fourth Amendment search does not need to be knowing and intelligent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 235-46 (1973). Defendant had been in custody only a short time. *United States v. Desir*, 257 F.3d 1236 (11th Cir. 2001). He had not been taken to a police station. Agents had the warrant to be in the house and had probable cause to arrest

---

[17]See footnote 13, *supra*.

Defendant, even though he had not been told he was under arrest. *Cf. United States v. Santa,* 236 F.3d 662, 676-78 (11th Cir. 2000). Thus, the Court finds the consent voluntary, and not coerced.

It also is possible the inevitable discovery rule could apply in this case. However, testimony was not offered as to whether the vehicle was seized or left at the residence after the search. Thus, the Court cannot apply the inevitable discovery rule on the basis an inventory search of the vehicle would have been conducted. *Florida v. Wells*, 495 U.S. 1, 4 (1990), *United States v. Williams*, 936 F.2d 1243, 1248-49 (11th Cir. 1991).

### ***Statements***

While in the residence, and after the vehicle search resulted in the seizure of a plastic grocery bag containing currency, Defendant made a statement that the bag contained $62,000. The case agent could not recall if the Defendant made the statement unsolicited or in response to a question. If unsolicited, the statement would be admissible as a voluntary statement of the Defendant. The Defendant was in custody and handcuffed at this point in time and knowledge of the money or its specific amount could tend to incriminate him. Thus, if the Defendant was questioned as to the amount, *Miranda* warnings should have been administered first. Since it is the government's burden to prove the voluntariness of a statement, the statement as to the amount of money should be suppressed under the Fifth Amendment.

The agent later advised the Defendant and the other two persons of their *Miranda* rights from a standard card he carries. Defendant stated he understood the rights and then made a statement that all the drugs in the residence belonged to him. Defendant then assisted the agent in locating certain items in the residence. He made a few other

statements prior to invoking his right to an attorney.

The Defendant had been in custody since his vehicle was stopped and he had been handcuffed and returned to the residence. There is no indication of coercion, improper treatment, or any conduct that would make the statements involuntary. Thus, the Court finds the Defendant voluntarily, knowingly and intelligently waived his Fifth Amendment *Miranda* rights up until the point he stated he wished to talk with an attorney. If the arrest had been unconstitutional, then the statements would be inadmissible. *Brown v. Illinois*, 422 U.S. 590, 602 (1975).

### *Conclusion*

The Court recommends the Defendant's Motion to Suppress be denied as to his claim the arrest was without probable cause. The Court, however, does not accept the United State's alternate theory that the Defendant was lawfully detained if probable cause was not present. The Court further recommends that the Defendant's consent to search the car be found voluntary (assuming a proper probable cause arrest). The Court recommends sustaining Defendant's objection to his pre-*Mirandized* statement as to the amount of money in the plastic bag, on the basis that it has not been shown to be spontaneous rather than as a result of questioning. Lastly, the Court recommends that the statements made by the Defendant after receiving his *Miranda* rights be admitted.

**DONE AND ENTERED** at Jacksonville, Florida this 18th day of March, 2005.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
Defense Counsel of Record
U.S. Atty.  (Brown)
Hon. Timothy J. Corrigan