**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                CASE NO. 3:04-cr-259-J-99TEM

COREY LAVALE MYERS

_____

**REPORT AND RECOMMENDATION**[1]

The Defendant has moved to suppress evidence obtained by an alleged jailhouse informant after the Defendant had been arrested and detained pending trial. (Doc. #46). The United States filed a memorandum in opposition to the motion (Doc. #51) and the Court heard testimony on the matter on February 23, 2005.[2]

*Factual background*

The Defendant was arrested on September 17, 2004 on a criminal complaint and later indicted on September 23, 2004. The United States sought detention at the bond hearing and after hearing proffers from both sides, the Court entered an order of detention under the Bail Reform Act, Title 18, U.S.C. Section 3142. The Defendant was housed by the United States Marshal's Service at the Baker County Jail.

At the time of Defendant's detention, a defendant in a separate case, Russell Lee Parker, Jr., was being housed at the Baker County Jail. *See United States v. Parker*, Case No. 3:04-cr-244-J-25TEM. Parker later was released from custody on October 27, 2004,

---

[1]Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

[2]A transcript of the hearing is found at Doc. #56.

on a joint motion to reconsider his detention. *See Id.*, Docs. #62 -- #67.  The prosecutor[3] in Parker's case stated in Court that significant information the government had believed to be true at the detention hearing, which had a direct bearing on the need for detention, had since been shown to be false.

Defendant Parker at some point during his incarceration contacted a special agent of the Federal Bureau of Investigation and advised him of comments he claimed Defendant Myers had made to him.  Parker stated that Myers told him that his (Myers') relatives were involved in the drug offenses with him and had provided the lawyer for him, that he wanted cooperate with law enforcement but the family members who hired the attorney want him to keep quiet.

This information was detailed in the United States' Motion for Inquiry into Potential Conflict of Interest (Doc. # 28) on December 21, 2004.[4]  In that motion, the United States stated it had related the information it received from the informant to Defendant's counsel on December 2, 2004 (Doc. # 28, p. 4,¶ 6).

At the suppression hearing, the DEA agent testified that the FBI agent contacted by Parker sent a message to the Drug Enforcement Administration on or about November 15, and that message was passed on to the case agent in this case about November 17, 2004. Sometime after that, Defendant Parker called the DEA agent, who interviewed him over the

---

[3]The prosecutors in the two cases are different, although from the same office. One is assigned to narcotics prosecutions, and one to fraud cases.

[4]When this information was brought to the Court's attention by the United States in a motion seeking to possibly disqualify counsel (Doc. # 28), the Court held a conflict-of-interest hearing, which included questioning the Defendant *en camera* (Docs. #40 & #41*).* The Court entered an order denying the motion (Doc. # 42).  *See United States v. Stuckey*, 917 F.2d 1537 (11th Cir. 1990).

telephone. The information was disclosed to the defense counsel in this case on December 2, 2004.

The DEA agent later talked with the FBI agent and verified that the FBI agent had not asked Defendant Parker to solicit statements from Defendant Myers. Defendant Parker had been released from custody on bond on October 27, 2004, prior to the DEA agent learning of the statements. Nothing in the record supports the allegation the government requested anyone to initiate conversation with Defendant Myers.

*Case law*

The United States may not elicit statements from a charged defendant in the absence of the defendant's counsel once the right to counsel has been asserted. *Massiah v. United States*, 377 U.S. 201 (1964). That prohibition includes statements elicited by informants encouraged by federal agents. The government may not intentionally created a situation "likely to induce [a defendant] to make incriminating statements without the assistance of counsel." *United States v. Henry*, 447 U.S. 264, 274 (1980).

In *Henry,* agents contacted an inmate who had been a paid informant for the Federal Bureau of Investigation. The inmate/informant advised he was the same cell block as the defendant and other federal prisoners. The informant was told to be alert to any statements, but not to initiate any conversation with the defendant or question him regarding a specific bank robbery for which the defendant had been charged. Later, the informant was released from jail and told an FBI agent that the defendant had made some admissions. The informant was paid by the FBI for furnishing the information. The informant testified at trial and the defendant was convicted and sentenced. On a *habeas* attack, the Supreme Court affirmed a circuit court reversal of the conviction, finding that "by

intentionally creating a situation likely to induce [the defendant] to make incriminating statements without the assistance of counsel, the government violated [his] Sixth Amendment right to counsel." *Henry, supra*, 447 U.S. at 274.

Defendant Myers claims in his motion (Doc. #46) that the "jailhouse informant initiated and otherwise both stimulated and conducted conversations" which he "knew would likely elicit incriminating statements from this defendant." Defendant further alleges that the "Government knew that this informant was acting as a Government agent and at a minimum condoned – if not encouraged – that activity and the elicitation of incriminating information." (Doc. #46 at 2).

At the suppression hearing, Defendant introduced no evidence to support those claims. The evidence at the hearing does not support the allegation that the prosecutor or agent knew Parker was acting as a informant, or encouraged him in any way to act as one.

Parker's detention began on September 16, 2004 (*see United States v. Parker*, Case No. 3:04-cr-244-J-25TEM, Docs. # 36 & #47). Myers has been in custody since September 17, 2004 (Docs. # 4 & #14). Parker was released on bond October 27, 2004. The FBI agent related to the DEA agent that he had not asked Parker to solicit any statements, but that Parker had contacted him. The DEA agent later – after Parker had been released from jail – had a conversation with Parker on the telephone.

Thus, the DEA agent investigating Defendant's case had no means to encourage Defendant Parker to elicit information from Defendant Myers because Parker had been released from incarceration before the DEA agent heard of him.

The FBI agent did not testify, but the DEA agent testified the FBI agent told him he had not requested Parker to ask any questions of Myers.

Although the Defendant may not have been advised of the "jailhouse informant's" name prior to the hearing, no specific discovery request was even filed by Defendant until March 14, 2004; a date well after the December 2, 2004 oral disclosure, the December 21, 2004 conflict of interest motion, and the January 27, 2005 conflict of interest hearing. The suppression hearing on this issue was held February 23, 2005.

Defendant had adequate time to obtain any discovery to support his position. On the record, there is no support for it. In *Glock v. Singletary*, 51 F.3d 942, 946 (11th Cir. 1995), the court rejected an *Henry*-Sixth Amendment violation claim concerning the testimony of a fellow inmate, finding no factual support for the claim.

Even in a case in which an inmate was told to "keep his ears open," the Eleventh Circuit has declined to find that the there was any evidence of a prearranged agency-informer relationship aimed at discovering incriminating evidence. *Lightbourne v. Dugger,* 829 F.2d 1012 (11th Cir. 1987).

In the instant case, Defendant has failed to even show any agent-informer contact prior to the informer advising an agent what he claimed to have heard the Defendant state. This case is on the same footing as *Glock, supra.*

There is no authority that the United States must turn a deaf ear to what a fellow inmate relates, unsolicited, to an agent.

Accordingly, the undersigned recommends the Motion to Suppress Evidence Obtained by Jailhouse Informant and Incorporated Memorandum of Law (Doc. #46) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this 20th day of March, 2005.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
Defense Counsel of Record
U.S. Atty. (Brown)
Hon. Timothy J. Corrigan